CRANCER et al. v. UNITED STATES et al.

No. 12408.

District Court, E. D. Missouri, E. D.

June 16, 1938.

Louis Mayer and Irl. B. Rosenblum, both of St. Louis, Mo., for plaintiffs.

Elmer B. Collins, Sp. Asst. to Atty. Gen. (Thurman Arnold, Asst. Atty. Gen., on the brief), for the United States.

Thomas M. Ross, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., on the brief), for defendant Interstate Commerce Commission.

Before WOODROUGH, Circuit Judge, and DAVIS and MOORE, District Judges.

PER CURIAM.

Plaintiffs in this action seek to have enjoined an order of the Interstate Commerce Commission.

The plaintiffs, on September 14, 1936, filed a complaint against certain carriers before the Interstate Commerce Commission, in which it was alleged that the rates charged by the carriers for the transportation in car load lots of used thread protectors for iron pipe were inapplicable to certain shipments. Plaintiffs sought to have other rates prescribed for the future, and to have reparation for alleged unlawful charges exacted in the past.

The testimony was taken by an Examiner, and on August 6, 1937, the Commission entered its order, "that the complaint in this proceeding be, and it is hereby, dismissed." (Modified in immaterial respect, November 8, 1937). This is the order that plaintiffs now seek to enjoin, under the provisions of the Urgent Deficiencies Act of October 22, 1913, 28 U.S.C.A. §§ 41, 43–48.

Plaintiffs purchased used thread protectors for iron pipe principally in, or about, the oil fields of the Southwest, and shipped them to Saint Louis, Missouri, and East Saint Louis, Illinois. Plaintiffs did not re-melt these used thread protectors, but reconditioned and resold them for the purpose for which they were designed. About fifty percent of the protectors purchased were capable of being thus treated and sold in the market.

"Scrap iron", as that term is used in railroad tariffs, means "iron or steel having value for remelting purposes only."

The Court is asked to review the evidence offered before the Commission for the purpose of determining whether or not the Commission entered the proper order.

This Court is not vested with authority to review generally orders of the Commission. The jurisdiction of the Court in such matters is granted by the statute, 28 U.S.C.A. § 41 (27), (28), in the following instances:

(1) Of all cases for the enforcement of any order of the Interstate Commerce Commission.

(2) Of all cases to set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission.

The Supreme Court has consistently ruled that these two paragraphs are to be read together. The Court is not vested, therefore, with authority to set aside and annul every order of the Commission, but only such orders as are affirmative in the sense that they command action by parties for which a suit to compel obedience may be maintained. It would be futile for a Court to set aside an order which does not require some action to be taken. Procter & Gamble Co. v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091; Hooker v. Knapp, 225 U.S. 302, 32 S.Ct. 769, 56 L.Ed. 1099; United States v. Griffin, 58 S.Ct. 601, 82 L.Ed. ——, decided February 28, 1938, and many cases therein cited.

The order here sought to be enjoined does not command anything of any party. It does not direct that the carriers raise, lower or maintain existing rates. It commands no action of any kind or character, but merely dismisses the complaint.

The statement made in argument that the order in question, "directed the railroads to charge as an applicable rate on the scrapped thread protectors the same rate as applied to the transportation of the new thread protectors" (plaintiffs' brief, page 53), has no basis in the order itself. The Court should hesitate to so construe the order in an attempt to get jurisdiction to review the action of the Commission. The establishment of uniform rates for the transportation of freight, and the applicability of such rates in particular cases, are matters expressly delegated by statute to the Commission. In every respect it is equipped to intelligently act in that field. The function of the Court is quite different. It may set aside orders of the Commission only in the event that they affirmatively direct action contrary to established law. The nature of the order in this instance does not

warrant such action. It was a mere negative order.

■ The Commission did, in effect, rule that the scrap iron rates were inapplicable to the shipments in question. But it did not require by its order that any rate be collected. The command to exact the applicable tariff charge is contained in the statute. What plaintiffs seek relief from is not the coercive effect of the order entered, but from a requirement of the statute. Shannahan v. United States, 58 S.Ct. 732, 82 L.Ed. ——, decided April 4, 1938.

Standard Oil Co. v. United States, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999, decides the very issue presented in this case. The Commission dismissed a complaint seeking damages for alleged over charges on past shipments of freight. The Court said, (1) the order was negative in character, and (2) that plaintiff, under section 9 (49 U.S. C.A. § 9) of the Interstate Commerce Act, having elected to seek damages before the Commission, and having been denied that relief, was by the statute barred from again pressing the same demand before the Court.

This Court is without jurisdiction to grant the relief sought by plaintiffs in this case, and the bill should be, and is, dismissed. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263.

Findings of Fact, Conclusions of Law and a Decree, accordingly, may be tendered for approval, signature and entry.